# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **EARL F. COLE,** | ) |
| Plaintiff, | ) Case No. 1:07CV00001 |
| v. | ) **OPINION AND ORDER** |
| **BUCHANAN COUNTY** | ) By: James P. Jones |
| **SCHOOL BOARD, ET AL.,** | ) Chief United States District Judge |
| Defendants. | ) |

*Michael A. Bragg, Bragg Law PLC, Abingdon, Virginia, for Plaintiff; Jim H. Guynn, Jr., Guynn, Memmer & Dillon, P.C., Roanoke, Virginia, and Thomas R. Scott, Jr., Street Law Firm, LLP, Grundy, Virginia, for Defendants.*

In this case, a newspaper reporter seeks damages and declaratory and injunctive relief after a local school board barred him from entering school property because he wrote articles critical of the school administration. I find that the individual school board members are not entitled to legislative immunity from suit and that a sufficient First Amendment retaliation claim has been pleaded.

# I

The defendants have moved to dismiss the Amended Complaint. For the purposes of considering the Motion to Dismiss, I must accept the following allegations made by the plaintiff in his Amended Complaint as true.[1]

The plaintiff is the publisher and a reporter for a local newspaper in Buchanan County, Virginia. The individual defendants are members of the Buchanan County School Board ("Board"). The plaintiff alleges that "prior to the events giving rise to this action, [he] had published investigative reports and editorial opinions highly critical of the defendants and causing significant controversy." (Am. Compl. ¶ 11.) He further claims that in order to carry out the duties of his profession, he is required to sometimes enter school property in order to gather news, investigate stories, and interview public officials and employees. He states that his access to school property was made "at appropriate times and circumstances under rights of access shared with other members of the public." (Am. Compl. ¶ 12.)

Shortly before a meeting of the Board on October 23, 2006, the plaintiff went to a Buchanan County school to gather news, and observed one of the Board members

---

[1] After the defendants filed a Motion to Dismiss the initial Complaint, the plaintiff's original attorney asked leave to withdraw from the case. I allowed the withdrawal and granted the Motion to Dismiss with leave to amend. The plaintiff's new attorney filed the Amended Complaint.

dropping off his children. The school in question is outside of the district represented by the Board member. The plaintiff maintains that he never entered the school building, did not disrupt any activities, and that he conducted himself properly.

On October 23, 2006, the Board met as scheduled, and passed a resolution directing that the plaintiff was no longer allowed on the property of any Buchanan County school except to attend a public board meeting. The resolution further stated that if the plaintiff entered school property, he would be prosecuted for trespass. The four individual defendants voted in favor of this resolution. The Board failed to give the plaintiff advance notice that this resolution was going to be discussed at the meeting, and it was not on the agenda.

A few days later, the Board met again and passed an amended resolution. The four individual defendants again voted in favor of the resolution. The amended resolution stated as follows:

> Whereas, Mr. Earl Franklin Cole, has been observed on school property on multiple occasions hiding around trees and/or bushes either loitering and/or taking photographs and has repeatedly ignored posted signs informing all visitors that they must report to the office upon arrival; and,
>
> Whereas, many parents and teachers have expressed concern about Mr. Cole's actions as aforesaid, especially when children are present while school is in session; and,

> Whereas, the Buchanan County School Board seeks to protect the students it serves from the unauthorized entry of third parties upon its premises and the taking of photographs without their or their parent(s)' permission.
>
> Now, Therefore, Be it Resolved, that by directive of a majority of the members of this Board, Mr. Tommy P. Justus, Division Superintendent, shall give written notice to Mr. Cole, or his counsel on his behalf, informing him that he shall not enter any school property during operational hours while school is in session and students are present, except upon express written invitation or to attend a public board meeting or to exercise his right to vote. Any violation of this notice may result in prosecution for trespass under Va. Code. §§ 18.2-119 and -128.

(Compl. Ex. B.)[2]

In response to these resolutions, the plaintiff filed the present action against the four individual school board defendants and the Board. The suit bases recovery on 42 U.S.C.A. § 1983 (West 2003) and a pendent state cause of action for defamation. The defendants assert several grounds for their Motion to Dismiss. First, they contend that they are shielded from this suit by the doctrine of legislative immunity.

---

[2] The first resolution had similar language but differed in a few significant ways. First, the second paragraph was originally worded: "Whereas, many parents and teachers have expressed concern about Mr. Cole being around the children; and . . . ." Another difference is in the third paragraph. The first resolution stated that the Board was charged with protecting students from "known criminals" as opposed to the "third parties" phrase used in the second resolution. Finally, the first resolution's ban was wider and restricted the plaintiff from being on "any school property, except to attend a public board meeting . . . ." (Compl. Ex. A.)

-4-

Second, they contend that the Amended Complaint fails to set forth a First Amendment retaliation claim. Third, they argue that the Amended Complaint fails to set forth an equal protection claim. Fourth, they state that the plaintiff has no right, protected by due process, to enter upon the property of the Board. And finally, they assert that any cause of action against the individual defendants in their official capacities is redundant because the Board is itself a party to the action. The issues have been argued and are ripe for decision.

II

Legislators are entitled to legislative immunity only when they act in a legislative capacity. *See Roberson v. Mullins*, 29 F.3d 132, 134 (4th Cir. 1994) ("Members of local governmental bodies are entitled to absolute legislative immunity from claims against them arising out of their actions in a legislative capacity") (internal quotations omitted) (citing *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 865 F.2d 77, 79 (4th Cir. 1989)).[3] "Not all actions

---

[3] During oral argument, the plaintiff suggested that the individual defendants are not protected by legislative immunity, because the defendant Board is not in reality a legislature. According to the plaintiff, the powers of local Virginia school boards are so confined that they cannot be considered legislatures. *See generally* Va. Code. Ann. § 22.1-79 (2006) (setting forth powers and duties of school boards). As the plaintiff conceded however, I need not reach this argument, because there are other grounds for denying the individual defendants immunity.

-5-

undertaken by local governmental bodies that have legislative responsibilities are necessarily legislative." *Id.* (internal quotations omitted). In short, legislators are not shielded from suit for administrative or executive actions. *Alexander v. Holden*, 66 F.3d 62, 66 (4th Cir. 1995).

The Fourth Circuit held in *Roberson v. Mullins*, 29 F.3d at 134-35, that legislators are acting in a legislative capacity when they adopt prospective legislative-type rules or act within a traditional legislative province. The Fourth Circuit has also adopted a test formulated by the First and Fifth Circuits to facilitate the determination of whether an act is legislative or administrative. As described by the Fourth Circuit in *Alexander v. Holden*:

> [U]nder this test, the key inquiry involves making a distinction between general and specific actions. If the underlying facts relate to particular individuals or situations and the decision impacts specific individuals or singles out specifiable individuals, the decision is administrative. On the other hand, the action is legislative if the facts involve generalizations concerning a policy or state of affairs and the establishment of a general policy affecting the larger population.

66 F.3d at 66 (internal citations and quotations omitted).

Thus, even the passage of a resolution, a traditionally legislative act, is likely an administrative or executive action if it affects only one individual. *See id.* But it is also possible for a resolution that impacts only one person to be considered a

-6-

legislative action. Indeed, the Supreme Court held in *Bogan v. Scott-Harris,* 523 U.S. 44, 56 (1998), that the elimination of a position as opposed to the firing of a particular employee, is a legislative act. While only one individual may be immediately affected by the elimination of a position, as the Court noted, "the termination of a position . . . unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office." 523 U.S. at 56.

The resolutions in this case, however, were not only specific to the plaintiff, but also the facts underlying the resolutions related only to the plaintiff. *See Alexander*, 66 F.3d at 67 (holding that an action was administrative in nature primarily because "[b]oth the facts underlying the . . . decision and the impact of the . . . decision were specific, rather than general, in nature.") And unlike cases in which legislative immunity has been allowed even when the action may have immediately impacted only one individual, the limited nature of the present resolutions suggests that the defendants were not "engaged in promulgating or enacting general policies affecting the broader society." *See id; see also Bogan*, 523 U.S. at 56. The resolutions also do not involve a traditional legislative province such as budgeting. *See Cooper v. Lee County Bd. of Supervisors*, 966 F. Supp. 411, 414-15 (W.D. Va. 1997) (holding that the elimination of an employee's benefits was a legislative act in

part because the legislators' actions involved the core legislative function of budgeting).

Had the resolutions here excluded all reporters from school property, the defendants could argue that they were adopting a prospective rule regarding interactions with the press. But the fact that both resolutions single out the plaintiff belies any such argument.

For these reasons, I find that the individual school board defendants are not entitled to legislative immunity.

Similarly, the Board itself is not shielded from this suit based on the doctrine of legislative immunity. Citing *Mainstream Loudoun v. Board of Trustees of the Loudoun County Library,* 2 F. Supp. 2d 783, 789 (E.D. Va. 1998), counsel for the Board suggested at oral argument that if the individual defendants were acting in a legislative capacity, the Board is similarly entitled to legislative immunity.

The Supreme Court held in *Monell v. Department of Social Services of New York* that "municipal bodies sued under § 1983 cannot be entitled to an absolute immunity, lest our decision that such bodies are subject to suit under § 1983 be drained of meaning." 436 U.S. 658, 701 (1978) (internal quotations omitted). More recently, in *Leatherman v. Tarrant County Narcotics Intelligence& Coordination Unit,* the Court reviewed its significant § 1983 cases and reiterated, "[U]nlike various

-8-

Case 1:07-cv-00001-JPJ-PMS   Document 49   Filed 08/21/07   Page 8 of 15   Pageid#: 119

government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." 507 U.S. 163, 166 (1993.)

In short, even if the local governmental officials, the Board members, were immune from suit in this case, a § 1983 action could still be maintained against the Board, a municipal entity.[4]

III

The defendants also contend in their Motion to Dismiss that the restrictions placed on the plaintiff are not significant enough to give rise to a First Amendment retaliation claim. In support of this argument, the defendants cite to a recent Fourth Circuit case, *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). Nevertheless, I find that the facts of this case are sufficiently distinct from those of

---

[4] The individual defendants also assert in their Motion to Dismiss that a suit against them in their official capacities is redundant "because the School Board itself is a party and official capacity suits represent only another way of pleading an action against an entity of which an officer is an agent." (Defs.' Mot. Dismiss Am. Compl. ¶ 5.) While it is true that a suit against a municipal officer is a suit against the entity itself, it is established that individual officers can be named in their official capacities even if the entity is also a party. *See Chase v. City of Portsmouth,* 428 F. Supp. 2d 487, 489-90 (E.D. Va. 2006) ("A significant amount of case law shows government officials named in their official capacities alongside the entities for which they are associated . . . . Naming [the officials] . . . even though damages cannot be obtained from them, does provide a certain level of public accountability." *Id*.

-9-

*Baltimore Sun,* and that the plaintiff has sufficiently alleged a First Amendment retaliation claim.

"The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). To sufficiently plead a First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) the defendants are government officials who took some action that negatively impacted or chilled the exercise of his First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendants' conduct. *Suarez Corp. Indus.*, 202 F.3d at 686.

In determining whether government conduct has adversely affected protected activity, I must apply an objective standard. The test is whether "a similarly situated person of ordinary firmness reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Baltimore Sun,* 437 F.3d at 416. (internal quotations omitted). This test is necessarily fact intensive because the court must focus "on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the

-10-

retaliatory acts." *Suarez Corp. Indus.*, 202 F.3d at 686. And while the test is objective, "the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity." *Constantine*, 411 F.3d at 500.

In *Baltimore Sun*, the Fourth Circuit applied this objective test and held that a state governor's directive ordering his employees not to speak to two reporters had not created a chilling effect. 437 F.3d at 420. The court stated, "We cannot accept that the Governor's directive . . . created a chilling effect any different from or greater than that experienced by . . . all reporters in their everyday journalistic activities." The court also noted, "[A] reporter endures only *de minimis* inconvenience when a government official denies the reporter access to discretionary information." *Id*. In short, the court concluded that because of the "'rough and tumble'" nature of the political arena, a reporter of ordinary firmness would not be chilled by a politician's refusal to answer questions. *Id*. at 419.

The Fourth Circuit revisited its *Baltimore Sun* opinion less than a year later in *Blankenship v. Manchin*, 471 F.3d 523, 530-32 (4th Cir. 2006). In *Blankenship*, the chairman of a coal company brought a First Amendment retaliation claim against a state governor after the governor threatened to cause state regulators to exercise

greater scrutiny over the chairman in retaliation for his public opposition to the governor's bond proposal. *Id*. at 525-27.

The *Blankenship* court began its analysis by stating that the proper standard to apply was whether the state governor's conduct would adversely affect the free speech of an ordinarily executive of a highly regulated business who had entered the political arena. *Id*. at 531. The court concluded that the alleged retaliatory acts would indeed chill the free speech of such a person. *Id*. at 532-33. In reaching this conclusion, the court noted, "Unlike a reporter, the typical citizen involved in politics does not contend with the retaliatory conduct of state officials as a cost of entering the political arena." *Id*. at 532 (internal quotations omitted).

The plaintiff in this case and the alleged retaliatory conduct cannot be easily analogized to either *Blankenship* or *Baltimore Sun*. On the one hand, as in *Baltimore Sun*, the plaintiff is a reporter. But as the plaintiff argues, a reporter in a small rural community like Buchanan County is likely more affected by retaliatory conduct than a metropolitan reporter working for a large news organization like the Baltimore Sun. In a community like Buchanan County, the public school system is typically one of the largest employers and is a principal focus of public attention and concern. On the other hand, unlike the *Blankenship* plaintiff, Cole should expect to withstand some retaliatory conduct as a cost associated with reporting in the political arena.

-12-

The alleged retaliatory conduct in this case is also not easily analogized to recent Fourth Circuit precedent. The Board members did not merely issue a directive ordering school employees not to speak to the plaintiff as in *Baltimore Sun*. Instead, the defendants drafted a potentially more severe restriction—banning him from school property otherwise open to the public.[5]

While the defendants maintain that the plaintiff is not wholly restricted in his ability to report on school activities, the plaintiff insists that the prohibition has chilled the exercise of his First Amendment rights. *But see Baltimore Sun*, 437 F.3d at 419 ("the evidence in this case shows that [the reporters] . . . have not been chilled from expressing themselves.") He argues that he is now significantly restricted in his ability to report on school activities such as sporting events and student exhibitions open to the public. In support of this argument, he notes that both resolutions not only explicitly threaten him with prosecution for trespass, but also insinuate that he is a pervert or a danger to children. Indeed, the first resolution implies that he is a criminal.

In focusing on the status of the speaker, the status of the retaliators, the relationship between the speaker and the retaliators, and the nature of the retaliatory

---

[5] As noted previously, there are some exceptions to this ban. The plaintiff can enter school property "upon express written invitation or to attend a public board meeting or to exercise his right to vote." (Compl. Ex. B.)

-13-

acts, I find that the First Amendment rights of a similarly situated small-town reporter of ordinary firmness could reasonably be chilled by the defendants' alleged conduct. While the defendants can dispute at the summary judgment or trial stages whether the plaintiff's protected activity has in fact been chilled, the plaintiff has sufficiently alleged a First Amendment retaliation claim. *See Blankenship*, 471 F.3d at 533 ("[the defendant] may demonstrate that [the plaintiff] has, as a matter of law, not been chilled in any respect; that opportunity, however, must be undertaken with the aid of discovery and not at the motion-to-dismiss stage.")

IV

The defendants also assert in their Motion to Dismiss that the Amended Complaint fails to state either a due process or equal protection claim. But viewing the allegations in a light favorable to the plaintiff, I find that sufficient claims against the defendants have been pleaded.

The plaintiff argues that he has sufficiently alleged a procedural due process claim, because his Amended Complaint states that the Board members deprived him of liberty and property interests without notice or a hearing. As to the liberty interest claim, the plaintiff contends that by not providing him with a name-clearing process

-14-

after defaming him in the resolutions, the Board has violated his procedural due process rights. [6]

I also find that the plaintiff has sufficiently alleged an equal protection claim. While the defendants contend that the claim must be dismissed because the plaintiff "has not identified any other news reporter against whom we can compare the Board's actions" (Defs' Br. at 5), the plaintiff did allege in his Amended Complaint that "no other press representative is prohibited from school property." (Am. Compl. ¶ 17.) While the plaintiff may be unable to prove that there are similarly situated reporters, I cannot at this point dismiss the equal protection claim.

V

For the foregoing reasons, it is **ORDERED** that the defendants' Motion to Dismiss is **DENIED**.

ENTER: August 21, 2007

/s/ JAMES P. JONES
Chief United States District Judge

---

[6] The plaintiff also argues that he has a property right in entering the school grounds because the public is generally invited onto the premises. However, I need not address the merits of this argument at this point, because I find that the plaintiff has sufficiently pleaded a procedural due process claim as to his liberty interest.

-15-