# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **EARL F. COLE,** | ) |
| Plaintiff, | ) Case No. 1:07CV00001 |
| v. | ) **OPINION AND ORDER** |
| **BUCHANAN COUNTY SCHOOL BOARD, ET AL.,** | ) By: James P. Jones |
| | ) Chief United States District Judge |
| Defendants. | ) |

*Michael A. Bragg, Bragg Law PLC, Abingdon, Virginia, for Plaintiff; Jim H. Guynn, Jr., Guynn, Memmer & Dillon, P.C., Roanoke, Virginia, and Thomas R. Scott, Jr., Street Law Firm, LLP, Grundy, Virginia, for Defendants.*

The plaintiff Earl F. Cole, who publishes and reports for a local Buchanan County, Virginia, newspaper called The Voice, brought this action against the Buchanan County School Board ("Board") and four members of the Board individually and in their official capacities, alleging that he had been unlawfully barred from school property in retaliation for writing and publishing articles critical of the Board and some of its members. The suit bases recovery on 42 U.S.C.A. § 1983 (West 2003) and a pendent state cause of action for defamation.

The defendants have now moved for summary judgment in their favor, which motion has been briefed and argued and is ripe for decision.

I

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985).

The basic facts have been set forth in an earlier opinion in this case denying the defendants' Motion to Dismiss. *See Cole v. Buchanan County Sch. Bd*., 504 F. Supp. 2d 81, 82-84 (W.D. Va. 2007). Recited in the light most favorable to the plaintiff, the fully-developed summary judgment record shows as follows.[1]

The plaintiff occasionally visits the public schools to gather news, investigate stories and interview public officials and employees. On several occasions he has published investigative reports and editorial opinions critical of the Board and its members. The plaintiff was aware that Board policy required visitors to the Buchanan County schools, upon entry of the school building, to sign in at the principal's office. The plaintiff contends that he was never told that he must also sign

---

[1] The parties have filed lengthy affidavits and exhibits in support of their positions.

in when visiting school grounds, but not entering school buildings—indeed, members of the public often use school facilities, such as the track, without signing in.

In October 2006, the plaintiff visited a Buchanan County school and while there observed and photographed a Board member from a different district dropping his child off at school. The plaintiff states that on this visit he did not enter the school building, did not disrupt school activities, and conducted himself properly, within plain view of the public. Approximately a week later, on October 20, 2006, the plaintiff published an article critical of the Board member's decision to enroll his child in a school outside of the district he represented and included the photograph taken during his visit to the school.

On October 23, 2006, at its scheduled meeting, the Board passed a resolution barring the plaintiff from all Buchanan County school property, except to attend public Board meetings, and stating that the plaintiff would be subject to prosecution for trespass if he otherwise entered school property. This resolution stated that the plaintiff had been observed on school property, hiding behind trees, loitering, and taking photographs; that "many parents and teachers ha[d] expressed concern about [the plaintiff] being around children"; and that the Board had been charged with

- 3 -

protecting students from "known criminals."[2] *Id.* at 83 n.2. An amended resolution, passed several days later by the Board, toned down its criticisms of the plaintiff and specified that the plaintiff "shall not enter any school property during operational hours while school is in session and students are present, except upon express written invitation or to attend a public board meeting or to exercise his right to vote." *Id.* at 83. The principal of the school in question drafted a letter notifying the plaintiff that he must check in upon entering school property and submitted this draft letter to the Board at the October 23, 2006, meeting. However, the Board elected instead to pass the resolution and the warning letter was never sent.

II

The individual defendants contend that they are entitled to qualified immunity from the plaintiff's § 1983 claims. The Fourth Circuit has recently reiterated the process I must follow in deciding such an issue:

> When a government official properly asserts qualified immunity, the threshold question that a court must answer is whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. If no constitutional

---

[2] One of the Board members was aware that the plaintiff had several old misdemeanor convictions. One of the convictions was for assault and battery and the other was for disposing of property under lien, both in 1987.

- 4 -

> right would have been violated were the allegations
> established, there is no necessity for further inquiries
> concerning qualified immunity. However, if a violation
> could be made out on a favorable view of the parties'
> submissions, the next, sequential step is to ask whether the
> right was clearly established—that is, whether it would be
> clear to a reasonable officer that his conduct was unlawful
> in the situation he confronted.

*Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (internal quotations and citations omitted). "The plaintiff bears the burden of proof on the first question—*i.e.*, whether a constitutional violation occurred," while the defendant bears the burden on the remaining question.[3] *Id.* at 377.

The plaintiff alleges a constitutional violation in the form of First Amendment retaliation. "The First Amendment right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). Such a plaintiff "must establish three

---

[3] As discussed in *Henry*, there is some conflict in Fourth Circuit case law as to whether the plaintiff or the defendant has the burden of proof on the second prong of the qualified immunity inquiry, that is, whether the right in question was clearly established. *Henry*, 501 F.3d at 378 n.4. Given this conflict, the *Henry* court followed the earliest of the conflicting opinions, *Logan v. Shealy*, 660 F.2d 1007, 1014 (4th Cir. 1981), to reach its conclusion that the defendant official bears the burden of proof as to his entitlement to qualified immunity. *Henry*, 501 F.3d at 378 & n.4.

- 5 -

elements in order to prove a First Amendment § 1983 retaliation claim. First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." *Suarez Corp. Indus.*, 202 F.3d at 685-86 (internal citations omitted); *see also Constantine*, 411 F.3d at 499.

In the present case, the plaintiff has sufficiently shown a constitutional violation.

The defendants do not contest that the plaintiff's investigative reports and editorial opinions constitute speech protected by the First Amendment. In order to determine whether the alleged retaliation adversely affected the plaintiff's protected activity (the second element of the inquiry), I must apply the objective standard of whether "a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). This involves focusing on "the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez Corp. Indus.*, 202 F.3d at 686. The Fourth Circuit has discussed the

- 6 -

effect of retaliation against reporters in *Baltimore Sun Co.*, 437 F.3d at 419-20 (holding that a state governor's directive ordering his employees not to speak to certain reporters had not created a chilling effect and stating that this government action did not "create[] a chilling effect any different from or greater than that experienced by . . . all reporters in their everyday journalistic activities"), and *Blankenship v. Manchin*, 471 F.3d 523, 532 (4th Cir. 2006) ("Unlike a reporter, the typical citizen involved in politics does not contend with the retaliatory conduct of state officials as a 'cost' of entering the political arena.").

These Fourth Circuit cases understand some instances of retaliatory conduct as a cost reporters should expect for reporting in the political arena, but in my earlier opinion I concluded that a reporter for a small newspaper in a rural community like Buchanan County, where the retaliator is the public school system that is a focus of public interest and concern and employs a large segment of the population, is more likely to be adversely affected by retaliatory conduct than a reporter in a metropolitan community working for a larger newspaper. *Cole*, 504 F. Supp. 2d at 87. While a reporter should expect some retaliatory conduct, the nature of the defendants' alleged retaliatory conduct—banning the plaintiff from school property otherwise open to the public—is more severe than the conduct in *Baltimore Sun Co. Id.*

- 7 -

The plaintiff argues that he is now restricted in his ability to report on school activities, such as sporting events and student exhibitions, as both resolutions explicitly threaten the plaintiff with prosecution should he enter school property and insinuate that he is a danger to children, and, thus, his protected speech has been chilled. The plaintiff's evidence is sufficient for a reasonable jury to find that the defendants' retaliatory conduct adversely affected his constitutionally protected speech.

A reasonable jury could further find a causal relationship between the plaintiff's protected speech—his articles critical of the defendants—and the alleged retaliatory action. The causation requirement is "rigorous," that is the protected speech must have been the "but for" cause of the retaliatory action. *Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006) (citing *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990)). The defendants argue that the resolutions were motivated not by the plaintiff's protected speech, but by the plaintiff's violation of the school policy requiring visitors to sign in and by the Board's concern for students' safety. They further argue that the plaintiff has failed to present any direct evidence to demonstrate but for causation. However, there is sufficient circumstantial evidence, if believed by the jury, to support the causation element. The timing of the October 23, 2006, resolution, a

mere three days after the plaintiff published an article criticizing a Board member for enrolling his child in a school outside of his district, could suggest to a reasonable jury that the article was the but for cause of the Board's decision to pass the resolution.

Other circumstantial evidence presented by the plaintiff could also support a conclusion of but for causation. Specifically, the discrepancy between the Board's published policy of requiring visitors to sign in upon entering school *buildings* and the policy it claims the plaintiff violated by not signing in upon entering school *grounds*, the lack of proportionality between a violation of such policy and the Board's decision to pass a resolution barring the plaintiff from all school property instead of sending the warning letter, and the Board's reliance on the plaintiff's old misdemeanor convictions to support the resolutions could suggest to a reasonable jury that the Board acted with the intent to abuse or retaliate against the plaintiff.

Read in the light most favorable to the plaintiff, the facts in the summary judgment record could support a reasonable jury finding that First Amendment retaliation occurred.

The plaintiff has met his burden of proof as to the existence of a constitutional violation, so I must next consider whether the right violated was clearly established, that is, whether it would have been clear to reasonable school board member that the

conduct in question was unlawful. *See Henry*, 501 F.3d at 378. While the unlawfulness of the conduct must be apparent to defeat qualified immunity, it is not necessary for the exact conduct in question to have been previously held unlawful. *Ridpath*, 447 F.3d at 313.

The defendants urge the court to focus on whether a reasonable school board member would have believed that it violated the plaintiff's First Amendment rights to bar him from school property for refusing to comply with school policies. However, this misstates the necessary inquiry. Taken in the light most favorable to the plaintiff, the evidence does not suggest that the plaintiff violated school policy, nor that this was the reason for the defendants action. Rather, the appropriate inquiry is whether a reasonable school board member would have understood that it was unlawful to retaliate against a critical member of the local press by banning him from school property otherwise open to the public.

The Fourth Circuit has held that it is well established that a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right, even if the act of the official, absent the retaliatory motive, would otherwise have been proper. *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). More specifically, it is clearly established that "the First Amendment prohibits an

- 10 -

Case 1:07-cv-00001-JPJ-PMS   Document 69   Filed 12/29/07   Page 10 of 11   Pageid#: 216

[official] from retaliating against an individual for speaking critically of the government." *Id.* at 406 (cited in *Blankenship*, 471 F.3d at 533).

I believe that a reasonable school board member, while knowing that a Virginia school board has the power to control access to school grounds, would have known that it was unlawful to bar a reporter from school grounds in retaliation for publishing critical articles. The defendants, who have the burden of proof as to this question, have offered no case law to demonstrate that such a right was not clearly established, nor have they shown any reason why a reasonable school board member would have believed it lawful to retaliate against a member of the press for publishing critical articles.[4] The defendants have thus failed to carry their burden of demonstrating their entitlement to qualified immunity.

III

For the foregoing reasons, it is **ORDERED** that the defendants' Motion for Summary Judgment is **DENIED**.

>ENTER: December 29, 2007
>
>/s/ JAMES P. JONES
>Chief United States District Judge

---

[4] The defendants, relying on the conflicting case law discussed in *Henry*, 501 F.3d at 378 n.4, instead argue that it is the plaintiff who has the burden of showing that such a right was clearly established.